```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
                      ATLANTA DIVISION


UNITED STATES OF AMERICA         :     CRIMINAL ACTION
                                 :
          v.                     :     No. 1:07-CR-339-CC
                                 :
KEVIN LAMAR TATE                 :
```

**REPORT AND RECOMMENDATION**

This matter is before the court on Defendant's motion to suppress evidence resulting from a warrantless arrest, [Doc. 14]; Defendant's motion to suppress statements, [Doc. 15]; and Defendant's motion to suppress evidence resulting from unlawful search warrants, [Doc. 19]. Defendant also filed a motion in limine to exclude certain witness identifications. [Doc. 16]. An evidentiary hearing was held on December 20, 2007.[1] After the evidentiary hearing, Defendant withdrew the motion in limine and it is therefore deemed **WITHDRAWN**. See Defendant's Brief at 20, [Doc. 28]. The motions are now fully briefed, as of May 9, 2008, and ready for a report and recommendation.

**I.
Summary of Contentions and Issues**

Defendant contends that he was illegally arrested in his apartment on September 13, 2007, when agents of the FBI entered

---

[1] References to the transcript of the evidentiary hearing, [Doc. 26], will be shown as "(T. —)."

his apartment without a warrant or exigent circumstances and took him into custody for a bank robbery that occurred on September 8, 2007.  While in the apartment, agents saw certain items of evidence in plain view during a protective sweep.  Defendant contends that the agents' entry into his apartment was unlawful and that the following should be suppressed: Defendant's un-Mirandized statement regarding certain automobile keys; all items observed in the apartment before the issuance of any search warrant; and all items seized pursuant to a later-obtained search warrant.  Defendant contends that the affidavit for the search warrant, once the information obtained from the illegal entry is redacted, fails to set forth probable cause for the issuance of the warrant.  In particular, Defendant argues that once the tainted information is removed, the affidavit fails to establish the required nexus between the criminal activity and the place to be searched.  Thus, all evidence seized and statements made should be suppressed under the Fourth Amendment exclusionary rule.

The government responds that the entry into Defendant's residence was justified by exigent circumstances arising from the nature of the offense — armed bank robbery — and by Defendant's retreat within his residence when the agents knocked at the door and announced their presence.  Alternatively, the government

argues that, even if all information obtained from the warrantless entry was removed from the affidavit, the remaining material was sufficient to establish probable cause, to include a showing of the nexus between the criminal activity by the Defendant and the premises to be searched.

## II.
## The Facts

In early September 2007, Special Agent Michael Greene was investigating three bank robberies, two on August 9, 2007, both Wachovia banks, and a third robbery on September 8, 2007, at Best Bank on Decatur Road in Atlanta. (T. 13). The robberies appeared to have been committed by the same person. (T. 14). During the last robbery, on September 8, 2007, a witness recorded the license tag number for the getaway vehicle, a silver Chevy Cobalt. Agent Greene ran the tag and discovered that the car was a rental from Enterprise Leasing Company. (T. 14). On September 10, Agent Greene learned that the vehicle was rented to Kevin Lamar Tate. (T. 15). The leasing agent at Enterprise identified Kevin Lamar Tate from his driver's license photo. At this time, the car was still leased to Mr. Tate. (T. 18). In addition, a check with the National Crime Information Center ("NCIC") revealed that the physical description of Kevin Lamar Tate was almost identical to the descriptions given by witnesses and

AO 72A
(Rev.8/82)

victims at the banks. (T. 21). The date of birth and Social Security numbers on the leasing agreement also matched the NCIC records.

On September 13, 2007, Agent Greene went to the residence address shown on the rental agreement, 1281 Brockett Road, Apt. 34-I, to look for Defendant. (T. 33). On that day, he saw the silver Chevrolet Cobalt parked near the apartment. He called for additional agents to come to the scene to attempt to make an arrest. (T. 33-34). The agents contacted the management of the apartments and obtained cooperation in confirming that Mr. Tate was in the apartment. (T. 34).

The agents then went to the door of the apartment and knocked, announcing, "This is the FBI, Mr. Tate — open the door." (T. 35). At this time, the agents saw Defendant open the drapes, look out, turn away, and appear to flee "back into the apartment, out of our observation." (T. 36). Agent Greene testified that he was concerned for the safety and security of his agents as well as other residents, "as well as for Mr. Tate." (T. 37). As a result, he informed his agents that they were going inside. (T. 37). He opened the door, entered, and observed Mr. Tate at the far end of the living room. (T. 38). Agent Greene then put Mr. Tate down on the ground, with the assistance of other agents, handcuffed him, and placed him under arrest. (T. 38). The

4

agents also conducted a protective sweep of the apartment. (T. 72-73).

While the agents were in the apartment, they observed a stack of $20 bills that had red stain on it, a white T-shirt that had a red stain on it, and a set of keys that had an Enterprise logo chain on it. (38). After Defendant was arrested and placed in handcuffs and leg irons, one of the agents asked defendant if the car keys were his, to which he answered, "yes." (T. 76). Defendant had not been Mirandized[2] at this time.

The agents asked for consent to search the apartment, but Mr. Tate initially declined to consent. (T. 39). Agent Green then told Mr. Tate, "Don't worry about it, I'm going to get a search warrant for your apartment." (T. 39). Mr. Tate then indicated a willingness to make a statement and to consent but Agent Greene told him that the agents would not accept consent because it would not be considered voluntary. (T. 39). Indeed, Agent Greene presented an application for a search warrant for the residence and the car to U.S. Magistrate Judge Alan Baverman, who executed the warrants on the same day, September 13, 2007.[3]

---

[2] That is, advised of his rights under Miranda v. Arizona, 384 U.S. 436, 16 L.Ed.2d 694 (1966).

[3] The car was parked close by the apartment in the parking lot and the officers saw a red stain visible on the driver's seat. (T. 43, 45). After the evidentiary hearing, Defendant withdrew the

Thereafter, the apartment was searched and a number of items were seized, including United States currency, a nine millimeter handgun with ammunition, a blue baseball cap with an "LA" logo, and various other items of clothing. See Gov't Exh. 7B.

### III.
### Discussion

**A. The warrantless entry and arrest.**

The officers in this case had no warrant to arrest Defendant or to search the apartment. Under the Fourth Amendment, "unless exigent circumstances [or consent] are present, the threshold to the entrance of a home 'may not reasonably be crossed without a warrant.'" Bates v. Harvey, 518 F.3d 1233, 1244-45 (11th Cir. 2008) (quoting Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382 (1980)). And, because "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," it is "a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton, 445 U.S. at 585-86 (quotations and citations omitted). Indeed, agents may not enter even with an arrest warrant unless they reasonably

---

motion to suppress evidence from the search warrant for the automobile. Defendant's Brief at 20, n.3 [Doc. 28]. Accordingly, the motion to suppress insofar as it challenges the search warrant for the vehicle is **WITHDRAWN** and there is no need to discuss the search warrant for the automobile any further.

believe the premises to be the defendant's residence. See Steagald v. United States, 451 U.S. 204, 212-14, 101 S.Ct. 1642 (1981)(arrest warrant does not authorize entry into third party's residence to execute warrant).

In this case, the government argues that the agents had exigent circumstances that relieved them from the requirement that they obtain a warrant. In essence, the government relies upon the fact that armed bank robbery is a violent offense and the fact that Defendant retreated into his apartment when the agents knocked at the door to establish exigency. The undersigned does not agree. The agents had probable cause to believe that Defendant was a bank robber. The agents also had probable cause to believe that he resided at the apartment on Brockett Road. In other words, the agents could have obtained a warrant that would have permitted entry to make an arrest of Defendant in his residence. See Payton, 445 U.S. at 602-3, Steagald 451 U.S. at 211-13. Nevertheless, rather than obtain a warrant, the agents went to the apartment without a warrant, knocked, and demanded that Defendant open up. There were no exigent circumstances except those created by the agents when they elected to knock at the door without a warrant.

This case is similar to United States v. Edmondson, 791 F.2d 1512 (11th Cir. 1986), where the defendant was arrested without a

7

warrant inside an apartment.  In that case, the FBI had probable cause to believe that the defendant had committed a bank robbery and that he had been seen at an apartment registered to a woman with whom he had been seen on several occasions.  Edmondson, 791 F.2d 1513-13.  With reason to believe the defendant was inside, the agents went to the apartment and surrounded it.  Id. at 1514. With guns drawn, the agents knocked at the door and saw the suspect look out the window.  Id.  At this point, an agent yelled, "FBI. Open the door."  Id.  The defendant opened the door, stepped back, and placed his hands upon his head.  Id.  The defendant was arrested inside the apartment, searched and read his Miranda rights.  Id.  The Court found that there were no exigent circumstances making it impossible or even imprudent for the agents to obtain a warrant before arresting the defendant. Id. at 1515.

Likewise, here, there was no reason the agents could not have obtained an arrest warrant before they proceeded to the apartment to make the arrest.  If they had done so, they would have been authorized to enter and make the arrest.  Payton, 445 U.S. at 602-3.   There was no exigency not created by the officers themselves at a time when they could have obtained a warrant.  Such an officer-created exigency is insufficient to justify a warrantless entry.  See United States v. Santa, 236

8

F.3d 662, 673-74 (11th Cir. 2000)(officer-created exigency insufficient).

The cases cited by the government are distinguishable. In United States v. Standridge, 810 F.2d 1034, 1037 (11th Cir. 1987), the FBI had cause to believe the Defendant had attempted to rob one bank and had actually robbed another bank *that very day* and that Defendant may have been aware that he was a suspect. And, in United States v. Kimmons, 965 F.2d 1001, 1009 (11th Cir. 1992), the agents had just apprehended two of the defendant's accomplices seconds before they were about to commit an armed robbery.  They were armed and the FBI knew that the defendant had been a part of the conspiracy and that the defendant's home had served as the headquarters for the conspiracy.  Id.  In addition, any delay would have tipped off the defendant that something had gone wrong and given him more time to prepare for resistance or escape.  Id.

Accordingly, upon consideration, the undersigned concludes that the agents' warrantless entry, though with probable cause, was without any exigent circumstances or consent that would excuse the failure to obtain a warrant.  The entry, therefore, was in violation of the Fourth Amendment.  Nevertheless, as discussed below, none of the evidence need be suppressed, because the affidavit for the search warrant was sufficient to establish

9

probable cause even without considering any information derived or resulting from the illegal entry.

**B. The sufficiency of the search warrant**.

Defendant contends that paragraph ten of the affidavit for the search warrant, which included a description of the illegal entry and the observations made inside the apartment, constitutes fruit of the poisonous tree that taints the search warrant and renders the affidavit insufficient. Defendant argues that the validity of the search warrant must be based upon an assessment of the affidavit without inclusion of the tainted information and that, without this information, probable cause is lacking.

The government concedes, correctly, that "[w]here a search warrant affidavit is based on information acquired as a result of an illegal entry, the court must examine the warrant and determine whether it was sufficient to establish probable cause for the search based on information independent of that learned of during the warrantless search." Gov't Brief at 18; see United States v. Glinton, 154 F.3d 1245, 1254-55 (11th Cir.1998); United States v. Chaves, 169 F.3d 687, 692-93 (11th Cir. 1999).

Paragraph ten of the warrant reads as follows:

> At approximately 12:05 p.m., agents of the Atlanta Office of the FBI approached apartment 34-I. After knocking on the door and announcing themselves as the FBI, Tate was positively observed looking out the window next to the front door. He was informed of the agents identity and to open

10

>     the door.  Tate there after fled from the window and did not
>     open the door.  Agents opened the door, identified
>     themselves again as federal agents and placed him under
>     arrest.  Witnessed in plain view of the agents were the
>     following: a stack of $20 bills with some of the bottom
>     bills having red stain on them, a wide T-shirt with red
>     stain on it, and a black ski mask.  These items were located
>     in the open living/dining room.  A set of car keys with an
>     Enterprise tag identifying it with the Chevrolet Cobalt car
>     were observed in plain view on top of the television in the
>     living room/dining room area.  Tate voluntarily acknowledged
>     that the keys were for the Chevrolet Cobalt parked out in
>     front of his apartment, and that the car was his.

Affidavit ¶10, Gov't Exh. 7B.

The first four sentences of paragraph ten may be considered, and are not tainted by the illegal entry, since they relate events that occurred prior to entry.  The remainder of paragraph ten, however, relates what happened after the agents went inside the apartment and made the arrest.  Assuming, as found above, that the entry was illegal, this latter part of paragraph ten could not be considered in evaluating probable cause.  See United States v. Chaves, 169 F.3d 687, 692-93 (11th Cir. 1999)("[W]here, as here, the search warrant affidavit is based on information acquired as a result of an illegal entry, we must look to whether the other information provided in the affidavit is sufficient to support a probable cause finding.").

Defendant argues that the warrant affidavit, without the tainted information in paragraph ten, fails to establish a nexus between the robbery and the place to be searched and thus fails

11

to establish probable cause for the warrant. Defendant concedes that the agents had probable cause to support an arrest warrant for Mr. Tate as the robbery suspect. <u>See</u> Def's Brief at 19. Defendant argues, however, that there is insufficient information remaining in the affidavit to establish probable cause to believe that evidence would be found in Mr. Tate's home. The government, on the other hand, argues that there was ample probable cause set forth in the affidavit to justify the search warrant for the apartment.

Contrary to Defendant's argument, the affidavit in this case, even without the information excised from paragraph ten, sets forth a sufficient basis for believing that evidence of a bank robbery, committed by Defendant, would likely be at defendant's residence. As a preliminary matter, the excised affidavit reveals that the agents were investigating a bank robbery that had occurred on September 8, 2007, a mere five days before the issuance of the warrant. The affidavit sets forth abundant probable cause for believing that Mr. Tate was the robber, based upon the identification of the Chevy Cobalt vehicle used in the September 8 robbery, which had been traced to Defendant through the car rental company. Photographs of Defendant obtained from his drivers license and the physical description from NCIC were consistent with the description given

by witnesses at the bank.  Defendant's residence address was known through the car rental agreement.

As for the nexus between the crime and Defendant's apartment, the affidavit recites that the Chevy Cobalt, which was spotted at the scene of the robbery and used as the getaway vehicle, was observed at Defendant's apartment complex, parked near the building in which Defendant resided.  Additional information obtained by the FBI confirmed Defendant's residence to be at this address.[4]  The affidavit also recites that Defendant was identified looking out the window when the officers knocked on the door.  Finally, the connection between the crime and the apartment was bolstered by the agent's testimony that, in his experience, bank robbery subjects are known to store evidence, fruits, and instrumentalities of their crime in their homes and vehicles.  See Paragraph 11, Affidavit.

The undersigned concludes that the above recitations are sufficient to establish probable cause for issuance of a warrant to search Defendant's apartment.  The robbery had occurred only five days before the warrant was sought.  Probable cause to search requires only a fair probability that contraband or other

---

[4] Although not included in the affidavit, the agent also testified that he observed what appeared to be dye stains on the seat of the Cobalt while it was parked outside the apartment. (T. 43).

13

evidence of a crime will be found in a particular place, and the determination of whether probable cause exists is "a practical, common-sense decision" based upon the totality of the circumstances set forth in the affidavit. <u>Illinois v. Gates</u>, 462 U.S. 219, 238, 103 S.Ct. 2317, 2332(1982); <u>accord</u> <u>United States v. Brundidge</u>, 170 F.3d 1350, 1352 (11th Cir. 1999) (citing <u>United States v. Gonzalez</u>, 940 F.2d 1413, 1419 (11th Cir. 1991)). As a matter of practicality and common sense, it was reasonable to believe that a bank robber would likely keep either the money, or the gun, or the clothing he wore at his residence premises, and that such items would still be there five days after the robbery. <u>See</u> <u>United States v. Jenkins</u>, 901 F.2d 1075, 1081 (11th Cir. 1990)(finding of probable cause that Jenkins committed the theft, the fact that the contraband stolen was composed of items which are capable of being hidden in a residence, and the statement of an agent who had ten years' experience investigating bank robberies provided sufficient probable cause to justify a search of Jenkins' home). Independent source evidence in the affidavit, therefore, supports a finding of probable cause for the issuance of the search warrant for Defendant's residence. <u>See</u> <u>Segura v. United States</u>, 468 U.S. 796, 813-14 (1984)(whether initial entry was illegal or not irrelevant to admissibility of evidence

14

because there was an independent source for the warrant under which that evidence was seized.)

### C.  Statements made at the time of arrest.

As a part of his motions to suppress evidence, Defendant seeks to suppress Mr. Tate's statement regarding the Enterprise car keys made after he was arrested in his apartment. He seeks to suppress this statement under both the Fourth and Fifth Amendments. The Fourth Amendment argument is based upon the proposition that the statement was the fruit of the illegal entry and his arrest. The Fifth Amendment argument is based upon the undisputed fact that Defendant was not Mirandized before he made the statement.

In response to the motion to suppress based upon the Fifth Amendment, the government has presented no argument. As noted, the fact that <u>Miranda</u> warnings were not administered is not disputed. Nor is it disputed that Defendant was in custody when the statement was made in response to a question by one of the agents about the keys. (T. 76). Further, the government has presented no argument that <u>Miranda</u> warnings were not required. Accordingly, Defendant's motion to suppress under the Fifth Amendment, [Doc. 15], appears to be unopposed and should be **GRANTED.**

AO 72A
(Rev.8/82)

Likewise, and based upon the undersigned's conclusion that the agents' entry into Defendant's apartment was illegal, it would appear that the statement made after Defendant was arrested and placed in handcuffs would be tainted by the Fourth Amendment violation and therefore inadmissible.  See Wong Sun v. United States, 371 U.S. 471, 484-85, 83 S.Ct. 407, 415-16 (1963); United States v. Chanthasouxat, 342 F.3d 1271, 1281 (11th Cir. 2003).

Accordingly, the statement regarding the car keys should be suppressed, whether based upon the Fifth Amendment violation or the Fourth Amendment violation.  The motion to suppress evidence, [Doc. 14, 19], therefore, should be **GRANTED** to the extent that the statement regarding the car keys is excluded from evidence at trial.

**IV.**
**Conclusion**

In conclusion, the undersigned finds that the warrantless entry into Defendant's residence was in violation of the Fourth Amendment and recommends that the motion to suppress evidence seized as a result of the warrantless arrest be **GRANTED** in part, in particular, the motion should be granted to the extent that the statement regarding the car keys is excluded from evidence. [Doc. 14].  The motion to suppress statements, [Doc. 15], should likewise be **GRANTED**.  The motion to suppress evidence based upon

16

unlawful search warrants, [Doc. 19], should be **DENIED**.  The motion in limine to exclude identifications [Doc. 16], per Defendant's notice of withdrawal, is deemed **WITHDRAWN.**

It appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this defendant be and is hereby **CERTIFIED** as ready for trial.

**SO REPORTED AND RECOMMENDED**, this 9th day of June, 2008.

*/s/ E. Clayton Scofield III*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE