**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVIN LAMAR TATE | Civil Action No.<br>1:07-cr-00339-SDG-ECS-1 |

**OPINION AND ORDER DENYING
<u>DEFENDANT'S MOTION FOR REDUCTION OF SENTENCE</u>**

This matter is before the Court on Defendant Kevin Lamar Tate's motion under 18 U.S.C. § 3582 to reduce his sentence from 946 months to 300 months [ECF 143].[1] Because Tate has not carried his burden to show that he is not a danger to the safety of any other person or to the community, the motion is **DENIED**.

**I.   Background**

In 2007, Tate was arrested for, charged with, and convicted of, a string of bank robberies in which he used a firearm. He was convicted on four counts of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d) (Counts One, Three, Five, Seven).[2] In connection with the robberies, Tate was convicted on three counts of possession of a firearm during a crime of violence in violation of

---

[1]   Several documents related to Tate's motion were filed under seal. While those documents will remain under seal, the Court has concluded that information drawn from those materials that is included in this Order (which is being publicly filed) need not remain sealed. Tate's motion to file under seal [ECF 145] is **GRANTED**.

[2]   ECF 144-1 (SEALED PSR), at 4.

1

18 U.S.C. § 924(c)(1)(A)(ii) (Counts Two, Six, Eight), but acquitted on a fourth such charge (Count Four).[3] He was also convicted of a fifth bank robbery (Count Nine).[4] Tate obtained over $11,000 from the banks.[5] He committed the first robbery while on state probation for a battery conviction and robbed the other four banks within about two months of completing that period of probation.[6]

On his federal convictions, Tate was sentenced to 946 months in prison—nearly 79 years—262 months on the armed bank robberies and 248 months on the bank robbery, to be served concurrently; 84 months on the first firearm possession charge, running consecutive to the term for the robberies; 300 months for the second firearm possession charge, running consecutively to the term for the robberies; and 300 months for the third firearm possession charge, running consecutively to the term for the robberies.[7]

Part of the reason for the length of Tate's sentence was the mandatory prison terms required under § 924(c). At the time, as applicable to Tate, a first conviction for possession of a firearm during a crime of violence (if the weapon was brandished) had a mandatory sentence of seven years; the second, a mandatory

---

[3]    *Id.*

[4]    *Id.* at 5.

[5]    *Id.*

[6]    *Id.* at 4, 15.

[7]    ECF 91, at 2.

25-year sentence; the third, an additional mandatory 25-year sentence—all to be served consecutively.[8] 18 U.S.C. §§ 924(c)(1)(A)(ii), (C)(i), (D)(ii) (2006).[9] Because all three of Tate's convictions for possession of a firearm during a crime of violence resulted from a single trial on a single indictment, the current version of § 924(c) would only have required the imposition of a mandatory seven-year consecutive sentence for each conviction. 18 U.S.C. §§ 924(c)(1)(A)(ii), (C). That is, rather than facing 57 years on these convictions alone, Tate would only face 21 years on them under the current regime.[10]

Another reason for the length of Tate's sentence is the career offender enhancement, applicable because of his prior convictions for robbery and possession with intent.[11] Tate asserts that a court today could, based on recent data and examples, vary downward from that enhancement.[12]

## II. Legal Standard

Section 3582 codifies the sentence-reduction process. A defendant must first exhaust his administrative rights. 18 U.S.C. § 3582(c)(1)(1). A district court may

---

[8]   ECF 144-1 (SEALED PSR), at 8–10.

[9]   A*vailable at* https://www.govinfo.gov/app/details/USCODE-2011-title18/USCODE-2011-title18-partI-chap44-sec924 [https://perma.cc/4ZBQ-EN69].

[10]  *See, e.g.*, ECF 143-1, at 7.

[11]  ECF 144-1 (SEALED PSR), at 15.

[12]  *See, e.g.*, ECF 143-1, at 8–10.

then reduce a prisoner's term of incarceration if, after considering the applicable § 3553(a) factors, it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "the defendant is not a danger to the safety of any other person or to the community," and (3) "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i), (ii). *See also United States v. Giron*, 15 F.4th 1343, 1347 (11th Cir. 2021) ("[A] district court may not grant compassionate release unless it makes three findings. . . . [F]irst, that an extraordinary and compelling reason exists; second, that a sentencing reduction would be consistent with U.S.S.G. § 1B1.13;[13] and third, that § 3553(a) factors weigh in favor of compassionate release."). The applicable policy statement (U.S.S.G. § 1B1.13), in turn, provides that "an unusually long sentence" is an extraordinary and compelling reason supporting a sentence reduction. Tate moves under this provision.

Because a defendant must carry his burden as to each of the necessary factors to be eligible for a sentence reduction (extraordinary and compelling, dangerousness, § 1B1.13, the § 3553(a) factors), *United States v. Kannell*, 834 F. App'x 566 (11th Cir. 2021), the Court may evaluate them in any order. If a

---

[13] The policy statement at U.S.S.G. § 1B1.13 provides that a term of imprisonment may be reduced if (1) extraordinary and compelling reasons warrant it; (2) the defendant is not a danger to the safety of another person or the community; and (3) the reduction is otherwise consistent with the policy statement.

4

defendant fails to meet any one of the factors, the Court need not address the remaining elements. *United States v. Tinker*, 14 F.4th 1234, 1237–38 (11th Cir. 2021) (per curiam) (Under § 3582, "the court must find that all necessary conditions are satisfied before it grants a reduction. Because all three conditions—*i.e.*, support in the § 3553(a) factors, extraordinary and compelling reasons, and adherence to § 1B1.13's policy statement—are necessary, the absence of even one would foreclose a sentence reduction."); *United States v. Durden*, Case No. 1:07-CR-0020-MHC-1, 2024 WL 4182591, at *2 (citations omitted) (indicating that the district court's finding on extraordinary and compelling circumstances, dangerousness, and the policy statement "need not be made in any particular order; indeed, if one of the three conditions is not met, compassionate release may be denied without considering the other conditions").

### III. Discussion

Tate has been in custody since his arrest in 2007.[14] He is currently housed at USP Victorville. According to the BOP, his release date is August 28, 2075.[15] He would be 98 years old. Tate argues that extraordinary and compelling reasons—specifically his unusually long sentence—justify a sentence reduction under 18

---

[14] ECF 144-1 (SEALED PSR), at 5.

[15] *Kevin L Tate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ [https://perma.cc/ 3QJX-ED8F].

U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13.[16] The Government opposes the motion, arguing primarily that the Commission exceeded its authority in allowing courts to consider nonretroactive changes in the law when determining whether a defendant had demonstrated "extraordinary and compelling" reasons for a sentence reduction.[17] The Government also contends that Tate poses an extreme risk of danger to the community.[18]

### A.   Jurisdiction

Before the Court addresses the substantive factors relevant to Tate's motion, it briefly addresses jurisdiction. A court may only consider a motion for compassionate release filed by a defendant if the defendant has first asked the warden of the facility where he is housed to file such a motion on his behalf and (1) the defendant has exhausted his administrative appeal rights or (2) thirty days have passed since the warden's receipt of the defendant's request. 18 U.S.C. § 3582(c)(1)(A). On November 1, 2023, Tate petitioned the warden at USP Coleman to file a motion for a sentence reduction.[19] The warden denied that request on

---

[16]   ECF 143-1.

[17]   ECF 150 (SEALED), at 6–12.

[18]   *Id.* at 12–14.

[19]   ECF 143-2 (SEALED).

November 27.[20] More than 30 days passed after Tate petitioned the warden before he filed the instant motion. Accordingly, exhaustion has been satisfied.

### B. The Commission's Authority to Adopt § 1B1.13

Congress tasked the Commission with issuing a policy statement describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission adopted § 1B1.13, which passed Congress without modification or disapproval. Section 1B1.13(b)(6) includes an "unusually long sentence" as a factor that may be considered in deciding whether a defendant has shown extraordinary and compelling reasons supporting a sentence reduction. Specifically,

> [i]f a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

---

20   ECF 143-3 (SEALED).

The Government does not dispute that Tate's nearly 79-year sentence is unusually long and otherwise satisfies the extraordinary and compelling requirement expressed in § 1B1.13. 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13(a)(1)(A), (b)(6). Rather, the Government asserts that the Commission exceeded its authority by allowing courts to consider nonretroactive changes in law in assessing whether a defendant satisfies the extraordinary and compelling factor.[21]

Undersigned has already rejected that argument on two occasions. *United States v. de la Puenta*, No. 1:94-cr-00351-SDG, 2024 WL 4692110 (N.D. Ga. Nov. 6, 2024); *United States v. Harper*, No. 1:04-cr-00218-SDG, 2024 WL 1053547 (N.D. Ga. Mar. 11, 2024).[22] For the reasons explained in *Harper*, the Court rejects the Government's position once again.

---

[21]   *See generally* ECF 150.

[22]   The Government's argument has also been rejected by at least five other judges in this district. *See, e.g., United States v. Durden*, No. 1:07-CR-0020-MHC, 2024 WL 4182591 (N.D. Ga. May 30, 2024); *United States v. Stinchcomb*, No. 1:96-CR-00259-LMM, 2024 WL 4182590 (N.D. Ga. May 2, 2024); *United States v. Colley*, No. 2:94-CR-7-RWS, 2024 WL 1516128 (N.D. Ga. Mar. 26, 2024); *United States v. Ware*, 720 F. Supp. 3d 1351 (N.D. Ga. 2024) (Jones, J).; *United States v. Allen*, 717 F. Supp. 3d 1308 (N.D. Ga. 2024) (Batten, C.J.).

This exact issue is under review by the Eleventh Circuit. *See United States v. Rizo*, Case No. 24-11349, Doc. 9 (11th Cir.). That court issued a jurisdictional question to the parties concerning whether it may hear appeals by the government from a grant of a motion for a sentence reduction. *Id.*, Doc. 20-2. The parties responded to that question but the Court of Appeals decided to carry the issue with the case. *Id.*, Doc. 25. Briefing on the substance of the

### C. Dangerousness

A defendant is not eligible for a sentence reduction unless he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Under § 3142, the Court should consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . [a] firearm;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person . . . ;
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)–(4).

There can be no argument that Tate's offenses were extremely serious and threatened violence. Further, the weight of the evidence presented at trial overwhelmingly pointed to Tate's guilt. His fingerprints were found at four of the five robberies; two of the bank tellers whom he victimized identified him.[23] His

---

appeal is not complete and it is not clear when the court may rule. Since this Court declines to grant Tate's motion, the outcome in *Rizo* is not determinative.

[23] ECF 98 (Trial Tr.), at 106–11, 121–23, 156–59; ECF 99 (Trial Tr.), at 364–70.

then-supervisor identified him from bank surveillance photographs.[24] The getaway car was traced to his home.[25]

Tate was thirty years old during his series of bank heists. He emphasizes that no one was injured and that he did not flee when arrested,[26] but this does not minimize the seriousness of his conduct or that he used the threat of violence against others to carry out his objectives. Moreover, the Government disputes Tate's account of his arrest, asserting that he attempted to evade and struggled with FBI agents.[27]

Throughout his federal incarceration, Tate has been involved in multiple instances of violent and disruptive conduct. Most significantly, on May 17, 2019,

---

[24] ECF 99 (Trial Tr.), at 184–90.

[25] ECF 98 (Trial Tr.), at 113–15.

"The record contains substantial evidence of Tate's commission of each of the charged offenses. Fingerprint evidence on withdrawal slips connected Tate to the commission of the robbery of the Carolina Street branch, the Chesire branch, the LaVista branch, and the Rockbridge branch. The tellers at the Chesire branch and the Best Bank also identified Tate as the bank robber at trial. A teller and the manager of the Rockbridge branch identified the vehicle used by the robber as an old white Chevrolet. Tate was involved in a traffic accident two weeks later driving a 1982 white Chevrolet Monte Carlo. A teller of the Best Bank saw the robber drive away in an Enterprise rental car. That car was found at Tate's residence on the day he was arrested." *United States v. Tate*, 586 F.3d 936, 944 (11th Cir. 2009).

[26] *See, e.g.*, ECF 143-1 (SEALED), at 18.

[27] ECF 100 (Trial Tr.), at 415–19; ECF 150 (SEALED), at 13.

Tate poured hot kitchen grease on another inmate's face, severely burning and permanently disfiguring the inmate.[28] This shocking act of violence was no outlier.

Tate admitted to fighting with another inmate on November 19, 2021.[29] As a result, he lost 27 days of good time and was placed in disciplinary segregation for 15 days.[30] On October 3, 2017, he assaulted another inmate with a homemade weapon.[31] He has been sanctioned for fighting with other inmates on four occasions.[32] He has admitted to charges that he had a dangerous weapon.[33] The BOP has rated his violent-risk level and security level as high.[34]

As for disruptive conduct, from 2013 through 2021, Tate was sanctioned for refusing work assignments, refusing to obey orders, and failing to stand for count.[35] Tate attributes his violent conduct in prison to his need to defend himself.[36] He claims he threw the hot grease on the other inmate because that

---

[28] ECF 143-5, at 3.

[29] *Id.* at 1.

[30] *Id.*

[31] *Id.* at 3.

[32] *Id.* at 2 (June 17, 2021), 4 (Nov. 11 and 28, 2015), 5 (May 13, 2014).

[33] *Id.* at 4 (Aug. 3, 2015).

[34] ECF 143-8, at 1.

[35] ECF 143-5, at 2, 4, 5.

[36] ECF 141-1 (SEALED), at 20–23.

11

inmate tried to stab him.[37] Tate may well need to defend himself in prison for a variety of reasons. But there is no evidence in the record supporting Tate's claim that he has resorted to violence only in self-defense.

The Court simply cannot square the requirement that a defendant not present a danger to other people or to the community and Tate's criminal convictions and conduct while incarcerated—despite Tate's assertions about his "relatively non-violent nature."[38] He argues that the real world isn't a high-security federal prison.[39] True enough. But the real world is also complicated, stressful, full of potential triggers, and lacking in many of the structural guardrails that restrict the conduct of federal inmates. The Court is by no means confident at this juncture that Tate does *not* pose a risk to anyone's safety. His most recent documented physical altercation took place just over three years ago. Tate has not carried his burden to show that he is not a danger to the community. Because Tate has not carried this burden, he is not eligible for a sentence reduction and the Court does not address the remaining § 3582 factors.

---

[37] *Id.* at 23.

[38] *See, e.g.*, ECF 153, at 2–3 (SEALED).

[39] ECF 143-1, at 26.

## IV. Conclusion

The Court commends Tate for the recent progress he has made while incarcerated. Tate's sentence is without doubt exceptionally long and out of proportion to the sentence he would likely receive today. But his history of violent conduct while in prison is simply too extensive and too recent for the Court not to weigh it heavily. With good conduct going forward Tate may be able to demonstrate to this Court that he is no longer a danger to the community. But that time is not now. Tate's motion for a sentence reduction [ECF 143] is **DENIED**. Tate's motion to file under seal [ECF 145] is **GRANTED**.

**SO ORDERED** this 17th day of March, 2025.

Steven D. Grimberg
United States District Judge